Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6463 | **DATE** | 2/2/2001 |
| **CASE TITLE** | Richard J. Locsmondy vs. Arrow Pneumatics | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 27 Feb. 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Arrow Pneumatics motion for summary judgment on Locsmondy's retaliation claim is denied. Locsmondy's motion for summary judgment is granted in part and denied in part. Arrow's breach of contract and eavesdropping claims are dismissed. Brown's defamation claim is also dismissed. Arrow's motion to dismiss Locsmondy's breach of contract claim is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 0 5 2001 | |
| | Notified counsel by telephone. | date docketed | 54 |
| ✓ | Docketing to mail notices. | C.S. | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | 01 FEB -2 PM 3: 47 | date mailed notice |
| WAP | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

FILED
FEB -2 2001
Judge Harry D. Leinenweber
U.S. District Court

DOCKETED
FEB 0 5 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD D. LOCSMONDY,

    Plaintiff,

v.

ARROW PNEUMATICS

    Defendant.

Case No. 99 C 6463

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Locsmondy ("Locsmondy") filed a complaint against defendant Arrow Pneumatics, Incorporated ("Arrow") alleging retaliation in violation of 42 U.S.C. § 2000e-3(a) and breach of contract. Arrow denied Locsmondy's allegations, and Arrow and Jerry Brown ("Brown"), the CEO of Arrow, asserted counterclaims against Locsmondy for breach of contract, defamation, and violation of Illinois Eavesdropping statute, 720 ILCS 5/14. Before the court are the opposing parties' motions for summary judgment. Locsmondy moves for summary judgment on his breach of contract claim, Brown's defamation claim, and Arrow's breach of contract and eavesdropping claims. Arrow moves for summary judgment on Locsmondy's Title VII claim, and if successful, asks the Court to dismiss Locsmondy's breach of contract pursuant to 28 U.S.C. § 1367(c)(3).

## BACKGROUND

Arrow manufactures, distributes, and sells air dryer and fluid power equipment. (Def.'s 56.1 Stmt. ¶ 2.) Arrow hired Locsmondy as its president in August 1996. (Def.'s 56.1 Stmt. ¶ 5.) Locsmondy and Arrow signed a series of written agreements and amendments governing Locsmondy's employment (the "Employment Agreement"), which the parties eventually extended to the end of December 2000. (Pl.'s 56.1 Stmt. ¶ 8-10, 13-14.) The Employment Agreement provided that Locsmondy could be terminated only for cause, which included, *inter alia*, fraud and serious misconduct. (Pl.'s 56.1 Stmt. ¶ 9.) Under the Employment Agreement, if Arrow terminated Locsmondy for failure to follow the company's reasonable instructions with respect to the performance of his duties, excessive absenteeism, flagrant neglect of work, or serious misconduct, Arrow had to provide Locsmondy with notice of the alleged default and an opportunity to cure it. *Id.* The Employment Agreement was last reaffirmed in writing by the parties on November 11, 1998. (Pl.'s 56.1 Stmt. ¶ 14.)

In mid-January 1999, Mark Yates, one of Locsmondy's subordinates, reported to Locsmondy that two female Arrow employees, Dawn Kovak and Pauline Ladika, had allegedly complained to him that Brown had made offensive sexual comments to them. (Pl.'s 56.1 Stmt. ¶ 53, Def.'s 56.1 Stmt. ¶¶ 20-23.) Locsmondy drafted a memorandum advising Brown of the alleged statements and

suggested that Locsmondy and Brown discuss the matter further. (Pl.'s 56.1 Stmt. ¶¶ 57-58, Def.'s 56.1 Stmt. ¶¶ 27-28.) Locsmondy then met with Arrow's corporate attorney, John Purtill, seeking advice regarding the alleged statements and the draft memorandum. *Id.* Purtill suggested revisions to the memorandum, and after making the revisions, Locsmondy gave it to Brown on February 3, 1999. (Pl.'s 56.1 Stmt. ¶¶ 58-59, Def.'s 56.1 Stmt. ¶¶ 30, 45-46.)

On February 5, 1999, Brown telephoned Locsmondy and fired him without notice. (Pl.'s 56.1 Stmt. ¶ 20, Def.'s 56.1 Stmt. ¶ 57.) During the telephone call, Brown told Locsmondy that he could no longer work with him in light of the memorandum. *Id.* Locsmondy asserts that this was the sole reason given by Brown during the conversation. (Pl.'s 56.1 Stmt. ¶¶ 20-21.) Brown maintains that he also told Locsmondy that he was being fired because key people at Arrow threatened to leave the company due to recent business decisions made by Locsmondy. (Def.'s 56.1 Stmt. ¶¶ 57-58.) During his deposition, Brown stated that he dismissed Locsmondy because of Locsmondy's divisive attitude, Arrow's deteriorating financial condition under Locsmondy's tenure, and because Brown viewed the sexual harassment claims described in the memorandum as a fraud created by Locsmondy in a personal attack on Brown. *Id.*

On February 4, 1999, the day before Brown terminated Locsmondy, Locsmondy held a meeting with all female employees at Arrow's Lake Zurich facility where he explained the procedure for

making sexual harassment complaints. (Pl.'s 56.1 Stmt. ¶¶ 73, 77, Def.'s 56.1 Stmt. ¶ 54.) Locsmondy brought a hand-held tape recorder to the meeting that was visible to those in attendance. (Pl.'s 56.1 Stmt. ¶¶ 79-81, Def.'s 56.1 Stmt. ¶¶ 55-56.) Although it is unclear whether the tape recorder was actually recording, it is undisputed that no one other than Locsmondy spoke, Locsmondy did not ask any attendees to speak, and no one objected to the tape recorder's presence. (Pl.'s 56.1 Stmt. ¶¶ 77, 81-83.)

### Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir.

1998). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). *See also LINC Finance Corp.*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). "[S]ummary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent." *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985), citing *Kephart v. Institute of Gas Tech.*, 630 F.2d 1217, 1218 (7th Cir. 1980). Furthermore, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on

a motion for summary judgment or for a directed verdict." *Freeman v. Madison Metropolitan School District*, 231 F.3d 374, 379 (7th Cir. 2000), quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## DISCUSSION

### Retaliation

Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act. 42 U.S.C. § 2000e-3(a). Section 2000e-3(a) states that

> "it shall be an unlawful employment practice for an employer to discriminate against any of its employees . . . because [they have] opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."

42 U.S.C. § 2000e-3(a). The Civil Rights Act of 1991 added that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice. 42 U.S.C. § 2000e-2(m).

In order to prevail on a claim of retaliation, a plaintiff must either offer direct evidence of retaliation or proceed under the burden-shifting method. *Id.* at 6. Direct evidence, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.

1989). Such evidence "in and of itself suggests that the person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criterion." *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir.1997). Direct evidence is rarely found, as it "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark*, 219 F.3d 612, 616 (7th Cir. 2000).

This is, however, the rare case. All parties agree that when Brown fired Locsmondy on February 5, 1999, Brown told him that he could no longer work with Locsmondy in light of the memorandum. (Def.'s 56.1 Stmt. ¶¶ 57-58.) That statement coupled with the memorandum, standing alone and if believed by the trier of fact, serve as direct evidence that Brown fired Locsmondy in violation of 42 U.S.C. § 2000e-3(a).

Even if Brown's statement and the memorandum did not constitute direct evidence of retaliation, Locsmondy's claim withstands the burden-shifting analysis. To establish a retaliation claim under the burden-shifting method, an individual must demonstrate that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. *Contreras v. Suncast Corporation*, Nos. 00-1977, 00-2493, 2001 WL 8434 at *6 (7th Cir. Jan. 3, 2001). Once the prima facie case is established, the

burden shifts to the defendant to articulate a legitimate reason for its actions which the plaintiff must show to be a pretext for unlawful retaliation. *Id.* at *6. Locsmondy has clearly suffered an adverse employment action. However, Arrow argues that Locsmondy did not engage in protected activity and that there is no causal connection between the memorandum and alleged sexual harassment and his termination.

With respect to the first prong, Arrow maintains that Locsmondy did not conduct or participate in an "investigation" as that term is commonly defined. This argument ignores the statute's opposition clause, which protects an employee who "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). The opposition clause thus affords protection to those "assisting another employee with [his or her] discrimination claim, as well as other endeavors to obtain the employer's compliance with Title VII." *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996).

Kovak testified during her deposition that Brown made several sexually offensive comments to her and that she told Yates about them. (Pl.'s 56.1 Stmt. ¶ 53.) Yates testified that she did tell him about the alleged comments and that he told Locsmondy. (Pl.'s 56.1 Stmt. ¶¶ 53-54.) Locsmondy asked Arrow's attorney how to proceed, and he drafted a memorandum informing Brown of the allegations. If the Court accepts their testimony as true, as

required for purposes of this motion, then it is clear that Locsmondy was assisting Kovak with her sexual harassment claims and has established the first prong of his retaliation claim.

As for the third prong, causation, a plaintiff must show that the adverse employment action would not have occurred "but for" his employer's motive to retaliate. *See McNutt v. Board of Trustees of the University of Illinois*, 141 F.3d 706, 707, 709 (7th Cir. 1998). Cf. *O'Connor v. Chicago Transit Authority*, 985 F.2d 1362, 1398 (7th Cir. 1993). Locsmondy does not have to prove that the protected conduct was the sole motive, or even the dominant or primary one, for the decision. *O'Connor*, 985 F.2d at 1368. However, he must do more than present evidence that the protected conduct played a minor role in the decision to fire him. *Id.* Locsmondy must show that "had it not been for the violation, the injury of which he complains would not have occurred." *Id.*

Arrow, on the other hand, must do more than simply point to possible alternative reasons for firing Locsmondy. In order for summary judgment to be granted, the company's evidence must be "so strong that no rational fact finder could not draw the contrary inference that a retaliatory motive played a substantial role in the decision." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir. 1996). The evidence must eliminate "any doubt as to whether [retaliation] played at least a motivating role [the

termination]." *Venters v. City of Delphi*, 123 F.3d 956, 974 (7th Cir. 1997).

As discussed above, Brown told Locsmondy that he was being fired because Brown could no longer work with him in light of the memorandum. Furthermore, Brown fired Locsmondy only two days after receiving the memorandum. "Generally, a plaintiff may establish . . . a [causal] link through evidence that the discharge took place on the heels of protected activity." *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1458 (7th Cir.1994); accord *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797-98 (7th Cir. 1997). The temporal proximity between Brown's receipt of the memorandum and Locsmondy's termination establish the necessary causal link, completing Locsmondy's prima facie case of retaliation.

Arrow responds to Locsmondy's prima facie case by articulating legitimate, non-discriminatory reasons for his discharge: (1) Brown believed that the memorandum and its underlying sexual harassment allegations were frauds perpetrated by Locsmondy as part of a personal attack on Brown; (2) Locsmondy's poor performance as president caused the company's financial condition to deteriorate; and (3) key personnel threatened to leave Arrow because of Locsmondy's business decisions. Brown spoke to the two women who allegedly complained of the sexual harassment, and both assured him initially, and in later affidavits, that neither had complained of

any harassment. (Def.'s 56.1 Stmt. ¶¶ 50.) Brown and the company's Chief Financial Officer, Philip Pick, testified that Arrow's financial condition deteriorated under Locsmondy, and they have supplied an email predating the sexual harassment memorandum alluding to these problems. (Def.'s 56.1 Stmt. ¶¶ 9-10, 41.) Furthermore, Brown and various employees testified that Arrow's two chief engineers were dissatisfied with Locsmondy's leadership and were threatening to leave the company. (Def.'s 56.1 Stmt. ¶¶ 31-40.) Thus, Arrow argues, Brown would have fired Locsmondy to prevent financial and employee troubles regardless of the memorandum.

Locsmondy counters with evidence showing that Arrow's legitimate reasons for firing Locsmondy are only pretext. Yates' and Kovak's deposition testimony supports Locsmondy's version of the facts. (Pl.'s 56.1 Stmt. ¶¶ 53-56.) Locsmondy presents financial summaries for 1997 and 1998 in support of his argument that Arrow's financial condition was not worsening under his tenure. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 9-10.) Locsmondy also points out that Arrow's evidence regarding employees' departures could be interpreted to show that Brown had little or no indication that their departures were imminent, weakening Brown's claim that he was forced to terminate Locsmondy in such an abrupt manner. (Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 35-38.) Given the evidence, a reasonable jury could choose to believe Locsmondy and

his witnesses over Arrow's witnesses and conclude that Brown would not have fired Locsmondy but for the memorandum and the underlying sexual harassment allegations. Arrow's motion for summary judgment on Locsmondy's retaliation claim must therefore be denied.

### Breach of Contract

Both Locsmondy and Arrow asserted breach of contract claims against the other. Locsmondy moves for summary judgment on both. Arrow concedes that summary judgment should be granted on its breach of contract claim, and therefore the Court will forgo an examination of that issue.

Locsmondy argues that Arrow breached the Employment Agreement when Brown fired him without notice. The Employment Agreement requires Arrow to give Locsmondy notice and an opportunity to cure prior to terminating Locsmondy for serious misconduct. The Employment Agreement mandates no such notice if Arrow fires Locsmondy for fraud. Locsmondy contends that he was fired for serious misconduct, and Brown admits that he fired Locsmondy, in part, for serious misconduct. (Pl.'s 56.1 Stmt. ¶ 21.)

Brown contends that the memorandum and the allegations described therein were fraudulent. Brown spoke with the two women who allegedly complained to Yates about the sexual harassment, and they assured Brown that they did not lodge any such complaints. (Def.'s 56.1 Stmt. ¶ 50.) However, if he did in fact engage in the alleged behavior, Brown's inquiries and stated belief that the

memorandum was a fraud would be undermined. Both sides present conflicting testimony on the issue, requiring credibility determinations. Clearly, genuine issues of material fact remain as to whether Brown fired Locsmondy for fraud or serious misconduct. Summary judgment is therefore inappropriate on Count II of Locsmondy's complaint.

### Defamation

Brown claims that the draft memorandum Locsmondy showed to Purtill was defamatory. To prove defamation, a plaintiff must show: (1) the defendant made a false statement about the claimant; (2) there was an unprivileged publication to a third party by the defendant; and (3) the publication damaged the claimant. *Vickers v. Abbott Laboratories*, 308 Ill.App.3d 393, 400, 719 N.E.2d 1101, 1107 (1999). A privileged communication is one that, except for the circumstances under which it was made, might be defamatory and actionable. *Kuwick v. Starmark Star Marketing and Administration, Inc.*, 156 Ill.2d 16, 24, 619 N.E.2d 129, 133 (1993).

Whether or not a defamatory statement is protected by an absolute or qualified privilege is a question of law for the court. *Barakat v. Matz*, 271 Ill.App.3d 662, 667, 648 N.E.2d 1033, 1038-39 (1995). The Illinois Supreme Court has adopted the Restatement (Second) of Torts approach to determining whether a qualified privilege exists. *Kuwick*, 156 Ill.2d at 25-27, 619 N.E.2d at 133-134. Restatement (Second) of Torts §§ 593-599 (1977). Under this

approach, there are three classes of communications that are conditionally privileged: (1) those involving some interest of the person who published the defamatory matter; (2) those involving some interest of the person to whom the matter is published or a third party; and (3) those involving a recognized public interest. Restatement (Second) of Torts §§ 594, 595 (1977).

The allegedly defamatory memorandum falls within the ambit of all three interests. Arrow's sexual harassment policy required Locsmondy, as president, to handle all such matters. Purtill's interest derives from his position as Arrow's attorney and his responsibility to advise Locsmondy on legal matters, including sexual harassment, upon request. Ruling that a qualified privilege exists in this case also serves the public interest of encouraging open and frank discussions between an attorneys and clients. *Popp v. O'Neil*, 313 Ill.App.3d 638, 643, 730 N.E.2d 506, 511 (2000). Furthermore, ruling that a qualified privilege exists supports the public interests of preventing sexual harassment and protecting victims, witnesses, and investigators of sexual harassment. *See Vickers*, 308 Ill.App.3d at 402-403, 719 N.E.2d at 1109-10; *Naeemullah v. Citicorp Services, Inc.*, 78 F.Supp.2d 783, 792-93, *Quiroz v. Hartgrove Hospital*, 1999 WL 281343 at *18 (N.D. Ill.). Cf. *Faragher v. City of Boca Raton*, 524 U.S. 775, 806, 118 S.Ct. 2275, 2292, 141 L.Ed.2d 662, 688 (1998).

The issue of whether a defendant abused a privilege is a question of fact. *Vickers*, 308 Ill.App.3d at 404, 719 N.E.2d at 1110. Once a defendant establishes a qualified privilege, the complainant must prove that the defendant intentionally either published the material in question while knowing that the matter was false, or displayed a reckless disregard as to the falsity of the matter. *Kuwick*, 156 Ill.2d at 24, 619 N.E.2d at 133. Illinois courts define "reckless disregard as to the falsity of the matter" as publishing the defamatory matter despite a high degree of awareness of the probable falsity or entertaining serious doubts as to its truth. *Id.* at 25, 619 N.E.2d at 133. An abuse of a qualified privilege may be proven when the complainant can show that the defendant recklessly failed to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties. *Id.* at 30, 619 N.E.2d at 136.

Brown argues that the question of whether Locsmondy abused the privilege by failing to investigate properly the claims of sexual harassment before giving the draft memorandum to Purtill raises a genuine issue of material fact. However, the undisputed evidence clearly indicates that the investigation was in its initial stages and that Locsmondy merely sought to inform Brown about the allegations. Furthermore, Arrow's sexual harassment policy required Locsmondy to handle all such matters. Brown admits that Yates met with Locsmondy and told him about the alleged statements

concerning sexual harassment. (Def.'s 56.1 Stmt. ¶ 23.) Locsmondy met with Arrow's attorney seeking confidential legal advice regarding the proper way to inform Brown about the allegations. Brown presents no evidence that Locsmondy improperly disseminated the information to others or that Locsmondy drafted the memorandum despite a high degree of awareness of its probable falsity or entertaining serious doubts as to its truth. Accordingly, Brown's defamation claim must fail.

## Illinois Eavesdropping Act

Arrow asserts that Locsmondy violated the Illinois Eavesdropping Act when he recorded the meeting on February 4 and that punitive damages should therefore be assessed against him. 720 ILCS 5/14. Eavesdropping is committed when an individual "[k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so . . . with the consent of all the parties to such conversation or electronic communication . . . ." 720 ILCS 5/14-2. The statute defines a conversation as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communications to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14-1(d). Punitive damages may be awarded to any or all parties upon which eavesdropping is practiced. 720 ILCS 5/14-6(c).

Under the statute, all parties to a conversation must consent to the recording of a conversation. *In re Marriage of Almquist*, 299 Ill.App.3d 732, 736-37, 704 N.E.2d 68, 71 (1998). Consent can be given implicitly, however, when a party knows that someone is eavesdropping on their conversation but does not object to it. *People v. Jenkins*, 128 Ill.App.3d 853, 471 N.E.2d 647, 651 (1984). In *Jenkins*, a party to a telephone conversation saw a police officer pick up an extension and begin listening to the conversation. *Id.* Although the court ruled that a telephone extension was not an eavesdropping device as defined in the statute, it also ruled that her failure to object indicated implicit consent. *Id.*

The parties dispute whether Locsmondy actually recorded the meeting. The parties agree that Locsmondy did not ask for the employees' consent, but all of Arrow's witnesses have testified that they saw the tape recorder at the meeting and assumed that it was recording. Although none of the employees explicitly consented to the meeting being recorded, none of them objected or even inquired about the presence of the tape recorder. Locsmondy did not ask any of the employees to speak, nor did anyone other than Locsmondy speak during the meeting. Consistent with *Jenkins*, the employees' knowledge of the tape recorder's presence and their failure to object to or comment about it reflects implicit consent.

- 17 -

Arrow's eavesdropping claim fails for a second reason. Punitive damages are the only relief to which Arrow would be entitled. In Illinois, the trial judge makes the initial decision about whether the facts of a particular case justify the imposition of punitive damages. *Loitz v. Remington Arms Company, Inc.*, 138 Ill.2d 404, 414, 563 N.E.2d 397, 402 (1990). Punitive damages are warranted in cases when an individual acts with malice, deliberate violence, or gross negligence indicating a wanton disregard for the rights of others. *Kelsay v. Motorola, Inc.*, 74 Ill.3d 172, 186, 384 N.E.2d 353, 359 (1978). Conduct that is outrageous due to the defendant's evil motive or reckless indifference to the rights of others also justifies punitive damages. *Loitz*, 138 Ill.2d at 415, 563 N.E.2d at 402 (citing Restatement (Second) of Torts § 908(2)(1979)).

The undisputed facts with respect to the eavesdropping claim are completely devoid of wanton or malicious behavior. Locsmondy, acting as Arrow's president, called a meeting during which he made a speech. There is no evidence that Locsmondy called the meeting to encourage anyone to make unfounded claims of sexual harassment. Although it is not clear whether Locsmondy recorded the meeting, no tape of the meeting has ever materialized. None of the parties have alleged, nor is there any evidence that Locsmondy taped the meeting for any sinister purpose. Even if Locsmondy did record the meeting, it was merely a recording of a prepared statement about

Arrow's sexual harassment policy. He did not ask anyone to speak; in fact, no one else spoke. Under Illinois law, such behavior does not warrant the consideration of punitive damages.

## CONCLUSION

For the reasons stated above, Arrow's motion for summary judgment on Locsmondy's retaliation claim is DENIED. Locsmondy's motion for summary judgment is GRANTED in part and DENIED in part. Arrow's breach of contract and eavesdropping claims are dismissed. Brown's defamation claim is also dismissed. Arrow's motion to dismiss Locsmondy's breach of contract claim pursuant to 18 U.S.C. § 1367(c)(3) is DENIED as moot.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: February 2, 2001